■ ADRIENNE RUDOLPH, Appellant, v JERRY LYNN, D.D.S., P.C., et al., Respondents, et al., Defendants. [792 NYS2d 410]—

Order, Supreme Court, New York County (Stanley L. Sklar, J.), entered April 9, 2004, which granted defendants' motions for partial summary judgment, deemed defendants' motion to dismiss plaintiff's claim for punitive damages resolved by stipulation, with leave to renew upon the completion of depositions, and denied plaintiff's cross motion to dismiss defendants' affirmative defense of statute of limitations, unanimously reversed, on the law, without costs, defendants' motion for partial summary judgment denied, that portion of defendants' motion seeking to dismiss the claims for punitive damages granted, and plaintiff's cross motion to dismiss defendants' affirmative defense of statute of limitations granted.

Plaintiff brought this action for malpractice and lack of informed consent after defendant Dr. Lynn, a dentist with defendant Toothsavers, fit and implanted six upper anterior crowns. Plaintiff alleges that despite defendants' adjustments and attempted replacements, they failed to properly complete the promised work, and that the resultant crowns were bulky, uncomfortable and unsightly. The crowns were initially fitted and inserted between June 11, 1998 and July 20, 1998, for a charge of $3,050. Plaintiff, expressing dissatisfaction with the resulting aesthetics and a bulky feeling of the affected teeth, had two of the six crowns replaced in January 1999, apparently at no charge. On both July 20, 1998 and January 11, 1999, Dr. Lynn assured plaintiff that the crowns looked fine and that she would get used to them. Then, in June 1999, plaintiff went to another dentist for an unrelated checkup and cleaning. This dentist advised plaintiff that the crowns installed by Toothsavers were too big for her mouth. Plaintiff saved enough money to have the crowns replaced, and, on November 2, 2000, returned to Toothsavers and complained about the size and feel of the crowns. On December 19, 2000, defendants replaced all six crowns, for an additional charge of $3,000.

On January 31, 2003, plaintiff commenced the action. Defendants moved to dismiss all claims relating to treatment rendered on and prior to January 11, 1999, as barred by the

statute of limitations. Defendants also moved to dismiss plaintiff's claim for punitive damages. Plaintiff cross-moved to dismiss defendants' affirmative defense of statute of limitations. Plaintiff argued that because she made each of her visits to Toothsavers for the treatment of a single condition, the installation of six anterior crowns, the continuous treatment doctrine tolled the statute of limitations. The IAS court granted defendants' motion. It found that the 22-month gap between plaintiff's January 1999 visit for replacement of two of the crowns, and her November 2000 visit during which she repeated her complaints about all of the six teeth, broke any claim of continuity of treatment. The court also held that because another dentist told plaintiff that the crowns were defective, this case was distinguishable from those applying the continuous treatment doctrine despite substantial gaps in time between visits to the health care provider where "a plaintiff was unaware that corrective treatment was needed or was told by a defendant's physician that things would improve over time." We reverse.

The "continuous treatment" doctrine, where applicable, tolls the 2½-year statute of limitations for bringing an action for medical or dental malpractice until the end of a course of treatment for a particular condition (see CPLR 214-a; *Nykorchuck v Henriques*, 78 NY2d 255 [1991]; *McDermott v Torre*, 56 NY2d 399 [1982]; *see also Borgia v City of New York*, 12 NY2d 151 [1962]). The doctrine rests upon the belief that the best interests of a patient warrant continued treatment with an existing provider, rather than stopping treatment, as "the [existing provider] not only is in a position to identify and correct his or her malpractice, but is best placed to do so" (*McDermott*, 56 NY2d at 408).

To invoke the doctrine, a plaintiff must establish a continuous course of treatment with a particular health care provider with respect to the condition that gives rise to the lawsuit (*Nykorchuck*, 78 NY2d at 258-259). The limitations period for a subsequent malpractice suit is thus tolled during the period that ends on the date of the last treatment for the particular condition. Here, the facts conclusively establish that despite the 22-month gap between plaintiff's January 1999 and November 2000 visits to Toothsavers, plaintiff's appointments between June 1998 and December 2000 constituted a continuous course of treatment for the attempted installation of a satisfactory set of six anterior crowns (*Marun v Coleburn*, 291 AD2d 340 [2002]; *Ramirez v Friedman*, 287 AD2d 376 [2001]). Moreover, application of the continuous treatment doctrine is not precluded by

plaintiff's discussion of her crowns with another dentist. Plaintiff was treated by that dentist for a routine checkup and cleaning, matters unrelated to the cosmetic dentistry provided by Toothsavers. The record is plain that plaintiff did not, thereby, evince an intention to abandon her reliance upon Dr. Lynn's care for the cosmetic dental services he was providing to her (*see Melup v Morrissey*, 3 AD3d 391 [2004]).

Finally, we grant that portion of defendants' motion which sought dismissal of plaintiff's claims seeking punitive damages. There is no evidence of any egregious or morally reprehensible conduct, or any of the other extreme aggravating factors which would warrant such relief (*Haughton v Merrill Lynch, Pierce, Fenner & Smith*, 278 AD2d 29, 30 [2000]; *see generally Walker v Sheldon*, 10 NY2d 401 [1961]). Concur—Mazzarelli, J.P., Marlow, Ellerin, Nardelli and Catterson, JJ.